**Randall GOMER, By and Through his next friend, Vera GOMER, Ruth S. Harris, by and through her next friend, Lois Bailey, Delma L. Payton, by and through her next friend, Savannah C. Creel, Joshua Wade, by and through his next friend, Cynthia Wade, Betty K. Brasher, Billy Isbell, and Willie M. Taylor, by and through his next friend, Betty Sue Taylor, all Individually as well as on behalf of all other similarly situated in the State of Alabama, Plaintiffs,**

v.

**PHILIP MORRIS INCORPORATED, R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company, The Honorable Bill Pryor, Attorney General of the State of Alabama, and The State of Alabama, a Governmental Entity, Defendants.**

No. Civ.A. 00–A–526–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 31, 2000.

---

William W. Smith, M. Clay Alspaugh, Hogan, Smith & Alspaugh, P.C., Birmingham, AL, for Plaintiffs.

Vernon L. Wells, II, Walston, Wells, Anderson & Bains, LLP, Birmingham, AL, Vernon L. Wells, II, R.J. Reynolds Tobacco Co., Montgomery, AL, Raymond L. Jackson, Jr., Office of Attorney General, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Dismiss (doc. # 6) for want of jurisdiction and for failure to state a claim upon which relief can be granted filed by the

State of Alabama and the Attorney General of the State of Alabama. Also before the court is a Motion to Dismiss (doc. # 9) for failure to state a claim upon which relief can be granted filed by Defendants Philip Morris Incorporated, R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, and Lorillard Tobacco Company (collectively, the "tobacco companies").

## II. *STANDARDS OF REVIEW*

A Rule 12(b)(6) motion tests the legal sufficiency of the Complaint. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the Complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) (citation omitted) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). In deciding a motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *See Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. This standard imposes an "exceedingly low" threshold on the nonmoving in order to survive a motion to dismiss for failure to state a claim that reflects the liberal pleading requirements set down in the Federal Rules of Civil Procedure. *See Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985).

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and can take one of two forms. It can take the form of a "facial attack" on the complaint, which requires the court to assess whether the plaintiff has alleged a sufficient basis of subject matter jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990); *Hayden v. Blue Cross and Blue Shield of Alabama*, 855 F.Supp. 344, 347 (M.D.Ala.1994). A "factual attack," on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings. *Lawrence*, 919 F.2d at 1529. Under a factual attack, the court may hear conflicting evidence and decide the factual issues that determine jurisdiction. *See Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir.1991).

## III. *ALLEGATIONS OF FACT*

This action arises out of the "Medicaid reimbursement" tobacco suits filed by the Attorneys General of a number of the states in 1996 and 1997. In November, 1998, the Attorney General of the State of Alabama, Bill Pryor, filed an action in Alabama state court claiming that the tobacco companies breached their agreement to include Alabama in any nationwide settlement of such suits in consideration of Alabama not filing a suit against them.[1] In 1998, the tobacco companies and the Attorneys General formalized a well publicized nationwide settlement in which the states agreed to forego further litigation in exchange for monetary compensation. Alabama then joined this nationwide tobacco settlement and dismissed its lawsuit.[2]

The Alabama Legislature subsequently passed, and the Governor signed, acts creating the Children First Trust Fund and the Alabama Twenty First Century Fund which provided for the spending of all funds received from the settlement. The Plaintiffs contend that these acts are unconstitutional and unenforceable.

The Plaintiffs in this action identify themselves as "recipients of Medicaid ben-

---

**1.** Other actions were also filed in state court against the tobacco companies by different plaintiffs. All such suits were eventually consolidated into the state's tobacco case.

**2.** The Plaintiffs in this action sought to intervene in the consolidated tobacco cases in state court. The state court denied their motion to intervene. This decision was appealed to the Alabama Supreme Court, which affirmed the trial court.

efits in the State of Alabama (or taxpayers who most probably will be Medicaid recipients in the future)." They sue on behalf of themselves and also seek certification of a class of all Alabama Medicaid recipients, asserting that the tobacco settlement was intended to compensate the State of Alabama for costs associated with paying for "tobacco related illnesses" through its Medicaid program. The Plaintiffs further assert that since the tobacco settlement was intended to compensate the State of Alabama for past, current, and future Medicaid outlays related to illnesses traceable to tobacco use, Medicaid recipients are intended third-party beneficiaries of the contract between the State of Alabama and the tobacco companies. Accordingly, the Plaintiffs contend that the State of Alabama is contractually bound under the terms of the nationwide tobacco settlement agreement to use all proceeds of the tobacco settlement exclusively for its Medicaid program. At the heart of their Complaint is the Plaintiffs' contention that the State of Alabama has legislatively mis-appropriated tobacco settlement funds to programs other than Medicaid of Alabama in violation of its contractual obligation to the contrary. As the Plaintiffs put it, "Medicaid of Alabama is not assured of one red cent from the approximate eighty-two million dollars ($82,000,000) which has already been paid by the Tobacco Companies and is being held in Escrow pending the outcome of this litigation." *Complaint* at 6.

On the basis of this latter allegation, the Plaintiffs seek various relief. First, the Plaintiffs seek a declaration that the Alabama appropriation enactments that allocate tobacco settlement money to programs other than Medicaid are unconstitutional in that they violate "substantive due process" and Article I, Section 10 of the United States Constitution, which forbids a state from passing any law that impairs the obligations of contracts. In other words, the Plaintiffs assert that the Alabama appropriation acts which create

the Children First Trust Fund and Alabama Twenty First Century Fund and allocate tobacco settlement funds to programs other than Medicaid are unconstitutional because they impair the State of Alabama's putative contractual obligation to use such funds for Medicaid alone. Second, the Plaintiffs seek an order from this court directing the State of Alabama to use all current and future tobacco monies, an estimated three billion dollars, exclusively for Medicaid programs.[3] To this end, the Plaintiffs sue the State of Alabama, the Attorney General of the State of Alabama, Bill Pryor, and the aforementioned tobacco companies. All have filed Motions to Dismiss. The court finds that the motions are due to be granted and, for the reasons that follow, this suit will be dismissed.

## IV. DISCUSSION

The Defendants make several arguments in support of their Motions to Dismiss. The court will consider the claims alleged by the Plaintiffs in terms of each Defendant named in the Complaint. The court first turns to the Plaintiffs' Complaint as it relates to the tobacco companies.

### 1. The Tobacco Companies

The Plaintiffs have included as Defendants to this suit all tobacco companies who were parties to the settlement in question. The tobacco companies point out that the Plaintiffs have not alleged any specific claim or sought any specific relief against them. The Plaintiffs do not contest this. Instead, the Plaintiffs assert that the tobacco companies are necessary for full relief to be granted under Federal Rule of Civil Procedure 19 and are proper Defendants, notwithstanding the fact that no relief is sought against them. The court does not agree.

■ Even assuming that the Plaintiffs' interpretation of Rule 19 is correct, the

---

**3.** Along these lines, the Plaintiffs claim that an equitable resulting trust was created for their benefit.

court fails to see why the tobacco companies are necessary in order for the court to grant full relief. In this regard, the Plaintiffs have made no attempt, either in the Complaint or in their Response to the Motions to Dismiss, to explain why the tobacco companies are necessary parties or why full relief cannot be granted without them. The most that they say is that since the Plaintiffs are third-party beneficiaries to the contract between the tobacco companies and the State of Alabama, both of these original parties to the contract must be joined in order for full relief to be granted. Courts, however, have uniformly rejected the argument that where a beneficiary is a party, all of the original parties to the contract must be joined under Rule 19. *See Sandobal v. Armour & Co.*, 429 F.2d 249 (8th Cir.1970); *see also* 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1613 (1986). There is no allegation that the tobacco companies have breached their agreement to pay billions of dollars to the State of Alabama. The tobacco companies are not in a position now, nor will they ever be in the future, to direct how the State of Alabama allocates funds it receives under the tobacco settlement—i.e., the sole issue in this lawsuit.

Accordingly, because it is undisputed that the Plaintiffs state no claim against the tobacco companies, which are not necessary parties for the purposes of relief, the tobacco companies' Motion to Dismiss is due to be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 2. The State of Alabama

The State of Alabama is also named as a Defendant. The State contends that there is no jurisdiction for this suit against it because it is entitled to Eleventh Amendment immunity.

■ For more than a century now, it has been well established that the Eleventh Amendment to the Constitution of the United States bars federal jurisdiction in suits against nonconsenting states. *See, e.g., Kimel v. Florida Bd. of Regents,* —— U.S. ——, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Hans v. State of Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).[4] The Eleventh Amendment immunity "extends beyond the words of the Amendment itself," *Gamble v. Florida Dep't of Health and Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir.1986), to include, as in this case, "suits brought in federal courts by [a state's] own citizens." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (citations omitted).

■ There are two ways in which this immunity may be overcome. First, Congress is empowered to abrogate a state's immunity by an explicit legislative act pursuant to section 5 of the Fourteenth Amendment or perhaps another of Congress' constitutionally dedicated legislative powers. *See, e.g., Kimel,* —— U.S. ——, 120 S.Ct. at 639, 145 L.Ed.2d 522; *Gamble*, 779 F.2d at 1511. Second, the state may waive its Eleventh Amendment immunity or consent to suit in federal court. *See, e.g., Edelman*, 415 U.S. at 673, 94 S.Ct. 1347; *Gamble*, 779 F.2d at 1512. In this case, there is no contention that one of these exceptions applies.

■ Instead, the Plaintiffs contend that Eleventh Amendment immunity does not extend to suits against a state for alleged violations of federal constitutional rights. This argument has no merit. In this context, the Supreme Court has clearly established that "[t]he [Eleventh] Amendment ... is a specific constitutional bar against hearing even federal claims that otherwise would be within the jurisdiction of the federal courts." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 120, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see*

---

**4.** The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

*also Principality of Monaco v. State of Mississippi,* 292 U.S. 313, 322, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) ("[A]lthough a case may arise under the Constitution and laws of the United States, the judicial power does not extend to it if the suit is sought to be prosecuted against a State, without her consent, by one of her own citizens."). Accordingly, the court rejects the Plaintiffs' contention, the Eleventh Amendment bars a suit in federal court against a state based on these types of claims, and the Plaintiffs' claims against the State of Alabama are therefore due to be dismissed for want of jurisdiction.

### 3. The Attorney General

■ The court now turns to the claims brought against the Honorable Bill Pryor, Attorney General of the State of Alabama ("Attorney General").[5] As a preliminary note, the court points out that these claims, whatever they may be, have not been independently discussed in the Complaint or in the briefs accompanying the Defendants' Motions to Dismiss. Upon an independent review of the Complaint, the court has had great difficulty in discerning just what claims, if any, are alleged against the Attorney General. He successfully had Alabama included in a settlement that will bring approximately three billion dollars to the state treasury. The State Legislature, with approval of the Governor, not the Attorney General, made the decision as to how the money was to be spent.

The Complaint alleges no wrongdoing by the Attorney General personally. The Complaint seeks no relief against the Attorney General. The best the court can deduce from the inartful pleading of the Complaint is that the Plaintiffs may perceive naming the Attorney General as a Defendant to be a means for obtaining from the court the declaratory relief being sought. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Without deciding that that would be correct, the court will assume that it is for the purposes of this Motion.

As noted earlier, the Plaintiffs first attempted to assert their claims in the tobacco cases in state court by seeking to intervene there. Intervention was summarily denied by the trial court and the Supreme Court of Alabama, without opinions. The Plaintiffs criticize this summary disposition of what they refer to as "serious federal constitutional issues." This court views these claims as raising far from serious constitutional issues, but bordering on the frivolous, which may explain the reason the state courts found no opinion necessary. This court too will move to a quick and final disposition. Simply put, this case presents no (nonfrivolous) constitutional question. It is therefore due to be dismissed for failing to state a claim upon which relief can be granted.[6] *See Fed. R.Civ.P.* 12(b)(6).

As noted, the Plaintiffs contend that the Acts of the Legislature establishing the

---

**5.** The State of Alabama and the Attorney General contend that this suit is barred by the *Rooker–Feldman* doctrine in that these same Plaintiffs unsuccessfully attempted to intervene in the tobacco suits filed in Alabama state court. The *Rooker–Feldman* doctrine prohibits a federal district court from reviewing a final judgment of a state court for alleged errors of federal law. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). According to the State of Alabama and the Attorney General, the state court's decision to deny intervention precludes a subsequent suit by these Plaintiffs on these claims in federal court.

The court does not agree. The Plaintiffs in this suit do not seek review of the state court's decision to deny intervention. Instead, they

have filed an independent action in federal court. The *Rooker–Feldman* doctrine, therefore, does not apply. *See, e.g., U.S. v. Napper,* 887 F.2d 1528, 1534 (11th Cir.1989) (Johnson, J., concurring) ("In the present action, the appellants sued the City in state court.... The United States attempted to intervene ....; it was not permitted to do so. Thus, the government had no opportunity in the state court proceedings to raise the issue involved in the present federal action.... Because the government did not have a reasonable opportunity to raise this issue in the state proceeding, the *Rooker–Feldman* doctrine did not preclude [federal jurisdiction]"). The court will not discuss this argument further.

**6.** The court notes that there is some authority that suggests that a totally frivolous complaint

Children First Trust Fund and the Alabama Twenty First Century Fund should be declared unconstitutional because they violate substantive due process and they also violate the Constitution's prohibition against a state passing a law that impairs the obligations of contracts (Article I, Section 10). These claims for relief, however, rest solely on a legal conclusion that the Plaintiffs draw from their allegations of fact—the third-party beneficiary theory they posit. Without this theory, the Plaintiffs' Complaint falls apart.

■ Unlike factual allegations, unsupported legal conclusions, such as the Plaintiffs' theory that they are third-party beneficiaries, "are not admitted as true...." for the purposes of a motion to dismiss. *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974)[7]; *accord South Fla. Water Management Dist. v. Montalvo,* 84 F.3d 402, 409 n. 10 (11th Cir.1996); *United States v. Air Florida Inc.,* 534 F.Supp. 17, 20 (M.D.Fla.1982) ("on a motion to dismiss ... the court need not accept conclusions of law or sweeping legal conclusions cast in the form of factual allegations."); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990) (on a motion to dismiss courts do not accept as true "legal conclusions, unsupported conclusions, unwarranted inferences ... [or] footless conclusions of law." (footnotes and internal quotations omit-

ted)). This is especially true where, as in this case, documents appended to the complaint, which are "treated as part of the complaint for all purposes under Rule 10(c), ... reveal[ ] facts which foreclose recovery as matter of law...." *Associated Builders, Inc.,* 505 F.2d at 100; *cf.* Fed. R.Civ.Pro. 10(c).

■ In this case, the Plaintiffs' conclusion that they are third-party beneficiaries to the settlement agreement is plainly wrong. Neither the Plaintiffs' allegations of fact, which the court accepts as true, nor the exhibits attached to the Complaint, which are part of the Complaint for all purposes, support the conclusion that the Plaintiffs are third-party beneficiaries of the tobacco settlement. To the contrary, the Complaint and the materials attached thereto demonstrate that it was the funds spent pursuant to the state's preexisting statutory obligation to Medicaid that was at issue in the tobacco settlements, not any derivative claim of the individual Medicaid recipients or the Medicaid program generally. The State of Alabama sought to recover money spent by the *state* in providing payments to healthcare providers for the treatment of tobacco related illnesses of Medicaid recipients, *not* to recover any kind of reimbursement to the recipients of the Medicaid-paid-for services. The Plaintiffs can no more be considered third-party beneficiaries of the settlement agreement than all taxpayers of the state might be considered such beneficiaries.[8]

may be dismissed for want of jurisdiction. The lack of jurisdiction, in such cases, is grounded in the lack of the merits. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939. (1946). Although this case surely falls within such a doctrine, the applicability of such a rule is ill defined. The court will utilize the well established principles underlying Rule 12(b)(6). The complaint is due to be dismissed on its merits.

7. The Eleventh Circuit adopted as binding authority all decisions of the former Fifth circuit decided prior to October 1, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

8. An issue regarding the Plaintiffs' standing lurks in the background of this suit. In short,

the Plaintiffs have not been injured in the least by the Acts they challenge. The Plaintiffs, for example, do not allege that their entitlement to Medicaid is at all affected by how the state chooses to allocate the tobacco settlement funds. Such a theory is not before the court, and if the court were to consider matters beyond the pleadings, it would not seem likely that there is a correlation between the two. At any rate, it seems clear that the Plaintiffs stand to gain or lose nothing in this lawsuit. They will be in exactly the same position no matter what relief the court might ultimately grant (or deny). *See, e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Instead, their interest appears to be that of a citizen or a taxpayer.

The Plaintiffs' claim under Article I, Section 10 is viable, if at all, only if they stand as third-party beneficiaries to the tobacco settlement agreement. On the basis of the allegations of fact and the exhibits attached to the Complaint, the court has determined that, as a matter of law, the Plaintiffs' are not third-party beneficiaries to the contract. Accordingly, the Plaintiffs, having no contract, cannot invoke the contract clause. *See United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 17, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (the threshold showing under Article I, Section 10 is that the state's action "had the effect of impairing a contractual obligation."). Likewise, the Plaintiffs' substantive due process claim, which is apparently premised on their alleged contractual interest in the tobacco settlement, is rendered wholly frivolous in the absence of such an interest. *See, e.g., TRM, Inc. v. United States,* 52 F.3d 941, 945 (11th Cir.1995). The court will not discuss it further.

In sum, the Complaint fails to state a claim upon which relief can be granted against the Attorney General. The Attorney General's Motion is therefore due to be granted.

## V. *CONCLUSION*

This suit is due to be DISMISSED as to all Defendants.

---

It hardly bears repeating that citizens or taxpayers, which is the most the Plaintiffs are with respect to the Acts they challenge, have no general standing to sue over the conduct of their governments. Such generalized gripes of an unhappy citizenry are properly voiced at the polling place, not the courthouse. *See,* *e.g., United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). The court, however, has left this issue by the wayside as the Complaint is premised on an alleged contractual interest, which, if correct, might confer standing on the Plaintiffs.